IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHARLES TAYLOR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. CIV 05-825-F |
| | ) |
| **JUSTIN JONES, et al.** | ) |
| | ) |
| **Defendants.** | ) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

        JAMES A. DRUMMOND, OBA #2504
        Assistant Federal Public Defender
        215 Dean A. McGee, Suite 707
        Oklahoma City, Oklahoma 73102
        (405) 609-5975 telephone
        (405) 609-5976 facsimile
        jim_drummond@fd.org

        COUNSEL FOR PLAINTIFF,
        CHARLES TAYLOR

DATE: September 24, 2008

As ordered by this Court in its Enter Order of 8/11/2008, Dkt.126, Plaintiff Charles Taylor respectfully RESPONDS to the Motion to Dismiss contained in the prayer for relief in Defendant's Response to Memorandum and Motion to Reactivate Proceedings and Brief in Support, Dkt. 127, 9/3/08.  Plaintiff respectfully incorporates his previous Memorandum and Motion to Reactivate Proceedings, Dkt. 125, 7/28/08, as part of this response to Defendants' motion to dismiss.

## ARGUMENT AND AUTHORITIES

Defendants cite the correct standard for evaluating a motion to dismiss in *Bell Atlantic v. Twombly*,[1] then utterly neglect to apply the holding to Plaintiff's complaint. The Defendant's pleading containing their motion to dismiss refers to pleadings which are vague, general, and inclusive of innocent behavior, but do not cite a single element of the Complaint as such.  In fact the Complaint is highly specific and has been litigated since 2005. Defendants moved to dismiss in September 2005, Dkt. 28, and this Court denied their Motion to Dismiss on January 11, 2006, Dkt. 44. Had the Complaint not been plausible, it would have been dismissed then.  *Baze* does not change the substantive character of the Complaint, and in fact mandates that the specific allegations be subjected to analysis by a trier of fact.

Defendants cite  this Court's ruling in *Short v. Jones*, No. CIV-08-339-F,  in support of their motion to dismiss.  They ignore several salient differences between that litigation and

---

[1] 127 S.Ct. 1955, 1974 (2007).

1

Mr. Taylor's § 1983 suit.[2] Mr. Short had a pending execution date and sought to enjoin his pending execution. The hurdles a plaintiff must clear to obtain a preliminary injunction were set forth in this Court's opinion in the *Short* case:

> Under the conventional four-factor test for the award of preliminary injunctive relief, the requesting party must demonstrate, first, that he has a substantial likelihood of prevailing on the merits; secondly, that he will suffer irreparable harm unless the preliminary injunction is issued; third, that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party, and four, that the preliminary injunction, if issued, will not adversely affect the public interest.

*Id.* at 106. This Court in *Short* mentioned a fifth factor– the fact that the Complaint was filed so late that it would delay a scheduled execution. This factor is inapplicable in Mr. Taylor's case. Further, Mr. Taylor is not required to show a substantial likelihood of prevailing on the merits. Under the standard in *Twombly*, as interpreted by the Tenth Circuit in *Ridge at Red Hawk, L.L.C. v. Schneider*,[3] to avoid dismissal the Plaintiff must show only that his "complaint contains enough facts to state a claim that is plausible on its face." The Tenth Circuit shortly thereafter elucidated the meaning of the word "plausible:"[4]

> "[P]lausible" cannot mean "likely to be true." Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent,

---

[2] A comparison of the slender pleading filed for Mr. Short and Plaintiff's substantive and detailed Complaint, Dkt. 1, and subsequent Memorandum, Dkt.125, illustrates another stark difference between this case and *Short*. The *Short* complaint is attached as Exhibit 1.

[3] 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Robbins v. State of Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), *citing Twombly* at 1974.

      then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."

Logically a likelihood that the plaintiff will prevail would require that his alleged facts are likely to be true. Thus it is clear that the preliminary injunction sought by Mr. Short required a more stringent showing than Mr. Taylor must show to continue with this cause of action under 42 U.S. C. § 1983, pled exactly as prescribed by *Hill v. McDonough*, 547 U.S. 573 (2006). Not only is the fifth factor of dilatoriness, found to be operative in Mr. Short's case *not* a factor here, but Mr. Taylor has alleged specific facts which are clearly not so general as to encompass benign conduct. Given the history of botched executions in Oklahoma, Mr. Taylor's factual allegations are not only plausible but present protocol provisions inferior to Kentucky protocol features scrutinized in *Baze v. Rees*, including that Kentucky has executed only one inmate by lethal injection, without error.

      Further, as argued in Plaintiff's Memorandum, Dkt. 125, *Baze* must be narrowly construed to hold that each case must be adjudged on its specific facts. The plurality's statement that a protocol "like Kentucky's" will pass muster is effectively a dictum at best, and using that dictum to dismiss a case without careful and particular fact analysis would fly in the face of the true, narrowest holding in *Baze's* majority: the opinions of Justices Stevens and Breyer.[5] Oklahoma's protocol has some similarities and numerous differences from

---

[5]Likewise, Defendants' invocation of the Plurality Opinion regarding courts not becoming "boards of Inquiry charged with determining 'best practices' for executions," defendants' Response at 4, *citing Baze* at 1531, is inapposite and is certainly not what Plaintiff seeks. Plaintiff seeks the factual scrutiny mandated by the narrowest majority

Kentucky's protocol, but the inquiry in Mr. Taylor's litigation cannot be confined to the text of the protocol. The facts of past implementation and lack of guidance for crucial procedures in future executions are where the rubber hits the road and where Oklahoma has failed abysmally on numerous occasions; Mr. Taylor should have the right to demonstrate to a jury that Oklahoma has botched the job before, has not provided for necessary measures to avoid future botches, and should be required to take simple measures to do the job in accordance with the Constitution. Mere written improvements in the protocol do not provide sufficient guidance to the execution team to do the job correctly.

The argument of Defendants that Terry Lyn Short was "situated identically to the Plaintiff herein"[6] is both factually and procedurally wrong. A one-drug protocol will substantially reduce the risk of cruel and unusual punishment. The underlying fallacy in the State's argument is that the current protocol will be fine if there are no problems – a tautology. The absence of specified measures in the event of inability to find viable veins, the lack of measures to reverse the effect of lethal drugs if an execution in progress is stayed, and the lack of adequate guidelines for monitoring of consciousness are constitutionally inadequate in part because these flaws creating substantial risk of harm are correctable with relative ease.

The Defendants again invoke distracting hyperbole when stating that the opinions of

---

opinion and has alleged sufficient facts to warrant further scrutiny.

[6]Defendants' Response, at 3.

Justices Ginsburg and Stevens "would call for a case by case analysis and apparently a moratorium of the death penalty by lethal injection in the meantime." Certainly a case by case analysis was called for and is even implied in the plurality which itself stated that if the anesthetic fails the result would be torture in violation of the Eighth amendment. But no opinion's holding called for any moratorium, or any end to lethal injection. Justice Stevens' opinion about ending the death penalty is acknowledged to be no part of his holding, and Plaintiff has no call for a moratorium anywhere in his pleadings.

Contrary to Defendants' (likely unintended) gallows-humor metaphor of the baby and the bathwater, Plaintiff simply believes that the analysis should proceed on the facts pled in each case and should replicate the Ginsburg-Breyer factual analysis. Plaintiff affirmatively believes there is a constitutional way to carry out his execution without undue burden on the State: by use of sodium thiopental *alone* in the dosage currently mandated by Oklahoma's protocol.

This Court, either in a bench trial or through its jury, has the power to strike the second and third drugs from the protocol as unconstitutional, as is acknowledged by the State Attorney General's office in its recent brief in *Duty v. Sirmons*, Tenth Circuit Case No. 07-7073, FN 10 at 36 (full brief attached hereto as Exhibit 2):

> Respondent will address the merits of Petitioner's Eighth Amendment claim and steadfastly maintains that no aspect of Oklahoma's protocol is unconstitutional. However, assuming *arguendo* that any aspects of the protocol create an unconstitutional risk that Petitioner may not be sufficiently anesthetized during his execution, those aspects of the protocol can be changed. (FN 10)

5

_____

FN 10: This includes the use of vecuronium bromide and potassium chloride. Unlike the Florida statute at issue in Hill, Oklahoma's statute mandates the use of a chemical paralytic agent. Okla. Stat. tit. 22, § 1014(A) (2001). However, if a court should decide, in a section 1983 action, that the Eighth Amendment requires the use of only one drug--an ultra-short acting barbiturate--the part of the statute requiring the use of a paralytic agent can be severed. See *State v. Humdy*, 875 P.2d 429, 430-431 (Okla. Crim. App. 1994) (severing the portion of the statute that was found to be unconstitutional). Admittedly, the OCCA has held that it cannot sever part of a statute in the absence of a severance clause. *State v. Uriarite*, 815 P.2d 193, 195-196 (Okla. Crim. App. 1991). However, the statute at issue in *Humdy*, which the court did sever, also did not have a severance clause. See Okla. Stat. tit. 22, § 1175.4(D) (1981). In addition, ***the OCCA's decision in Uriarite was clearly wrong in light of Okla. Stat. tit. 75, § 11a (1989), which mandates a presumption of severability. According to that statute, the statute at issue in this case, Okla. Stat. tit. 22, § 1014(A) (2001), is severable*** unless its application or the construction of its provisions would be inconsistent with the manifest intent of the legislature, the valid provisions of the act are so essentially and inseparably connected with and so dependent upon the void provisions that it cannot be presumed that the legislature would have enacted the statute without the void provisions or the valid provisions standing alone are incomplete and incapable of being executed in accordance with the legislative intent. As the Supreme Court has recognized, the decision made by many states to use lethal injection as a method of execution was motivated by a desire to make the death penalty more humane. Baze v. Rees, 128 S.Ct. 1520, 1527, n. 1, 170 L.Ed.2d 420 (2008). Thus, if a court finds that the statute as written presents an unconstitutional risk of pain, ***it would be entirely consistent with legislative intent to use a one-drug protocol.*** [Emphasis supplied]

The primary expert for the State in many lethal injection challenge proceedings, Dr. Mark Dershwitz, joined with Dr. Heath in advocating a one-drug protocol. A trier of fact might well find that Oklahoma's history of flawed implementation of the protocol and insufficient training and equipment would result in substantial risk of torture, and that the veterinarian model of an anesthetic only, which without dispute will cause death, is actually

6

easier to implement and less risky. In *Duty,* the State has effectively conceded that a one-drug protocol would be consistent with legislative intent. Plaintiff can plausibly demonstrate that in Oklahoma substantial risk of serious harm can easily be averted by a one-drug protocol.

The State attempts to divert the discussion into the area of deliberate indifference, citing *Farmer v. Brennan*, 511 U.S. 825 (1994).[7] Nowhere in *Baze* does it appear that showing deliberate indifference is a an analytical factor. Indeed this would be illogical, since oblivious, apathetic or unintentional indifference would be as harmful as deliberate indifference. This is a civil suit and Plaintiff need not prove some sort of *mens rea*. The State has increased the amount of drugs and has paid some verbal attention in its protocols to the issue of monitoring consciousness, but its training, equipment, and clarity of protocols are still inadequate to avoid substantial risk of serious harm, as Plaintiff has alleged and can prove through evidence. The factual particularity of Plaintiff's Memorandum, Dkt. 125, of the original Complaint, Dkt. 1, and of the attachments thereto, easily meet the *Twombly/Ridge at Red Hawk* test. Certainly Plaintiff's specific allegations are far more than "labels and conclusions" and far more than a "formulaic recitation of the elements of a cause of action." Defendants' accusation of "lawyer tautological reasoning" (Response at 8) is pure projection: its own thesis is essentially that attention to the facts of each case as

---

[7]In his Memorandum, Dkt. 125 at 2, Plaintiff states: "Mr. Taylor observes that the State of Oklahoma, despite some improvements to its written protocol, remains deliberately indifferent to his most critical Eighth Amendment concerns, although such indifference, as is clear from interpreting the *Baze* decision in his argument below, is in no way a criterion or prerequisite for Eighth Amendment relief."

mandated by *Baze* is "nitpicking" (*id.*), and that the surface similarities of the two states' protocols – by no means free of differences of great significance – somehow obviate the need for implementation scrutiny. This flailing assertion undermines even the plurality's logic – that a factual case based on historical evidence can be made to show that implementation of a protocol can violate the Eight Amendment – in seeming to suggest that the rough similarities in the two state protocols end the § 1983 inquiry

Further, there is no check against the Defendants reverting to earlier protocols if this litigation terminates without a binding order. Defendants are not even subject to the Administrative Procedures Act in Oklahoma. Failure to establish correct standards for implementation to avoid future botches could be productive of endless litigation in individual cases. Allowing this case to proceed to a factual judgment has a strong chance of establishing execution procedures compliant with the Constitution and much harder to assail.

The narrowest interpretation of *Baze* is mandated by *Marks v. United States*, 430 U.S. 188, 193 (1977). Plaintiff has argued this at length in his Memorandum, Dkt. 125, and these arguments go unrefuted, with only an invocation to the Court to ignore the specific examination of Oklahoma's facts– not just the protocol but their implementation and actual safeguards and training quality – in favor of a rote adherence to cases before this Court which were not § 1983 cases and not in the same procedural posture. Justice Breyer observed that there was no evidence of any implementation problem in Kentucky. *Baze* at 1566. There is ample evidence of implementation problems in Oklahoma, and that is a mammoth

distinction. Plaintiff's claims are real and cannot be legitimately swept away upon arguments so cavalier and nebulous as the State's arguments. The motion to dismiss should be denied and this case should proceed through additional discovery toward trial within a reasonable time.

        Respectfully submitted,

        */s James A. Drummond*
        JAMES DRUMMOND, OBA #2504
        Assistant Federal Public Defender
        215 Dean A. McGee, Suite 109
        Oklahoma City, Oklahoma 73102
        405-609-5975; 405-609-5976 telefacsimile
        e-mail: jim_drummond@fd.org

        **ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Richard N. Mann
Asst. Attorney General
richard.mann@oag.ok.gov

        *s/ James A. Drummond*
        JAMES A. DRUMMOND